# IN THE COURT OF APPEALS OF IOWA

No. 22-0963
Filed September 21, 2022

**IN THE INTEREST OF M.W.,**
**Minor Child,**

**A.J., Mother,**
    Appellant,

**M.W., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Brooke J. Thompson of Miller, Zimmerman & Evans, PLC, Des Moines, for appellant mother.

Jessica J. Chandler of Chandler Law Office, Windsor Heights, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

ConGarry Williams, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother and father separately appeal the termination of their parental rights. We conclude termination of the father's parental rights is in the child's best interests. We determine there is clear and convincing evidence in the record to support termination of the mother's parental rights, the mother waived her claim concerning reasonable efforts, and she did not preserve error on her request for an extension of time. We affirm on both appeals.

## I.      Background Facts & Proceedings

M.W. is the father and A.J. is the mother of M.W., who was born in 2014. The father and child resided together in Iowa, while the mother lived in Arizona. In 2019, there was a report that the father physically abused the child by inflicting injuries to her face. At that time the mother was in prison in Arizona, but she was released later in 2019. The mother has a criminal history of assault and domestic violence.[1]

The Iowa Department of Human Services (DHS) more recently became involved with the family in February 2021 when the father blended hot peppers and then put the peppers in the child's eyes as a form of punishment. He removed her clothing, tied her hands behind her back, and placed a gag in her mouth. The child had a black eye, split lip, and rug burns. The child was removed from parental custody on February 17 and placed in foster care.

---

[1] The mother has five other children. Her parental rights to four children older than M.W. were terminated. The mother was involved with the Arizona Department of Child Safety for a younger child, born in 2021, because the mother tested positive for marijuana at the time of the child's birth. This younger child was removed from the mother's custody. The mother is involved in juvenile court proceedings in Arizona for the child born in 2021.

The father did not participate in services prior to going to jail. The father pled guilty to child endangerment causing bodily injury. On January 26, 2022, he was sentenced to a term of imprisonment not to exceed five years and was in prison for the remainder of the juvenile court proceedings. A criminal no-contact order was entered prohibiting the father from having contact with the child until 2027.[2]

The child was adjudicated to be in need of assistance, pursuant to Iowa Code section 232.2(6)(b) and (c)(2) (2021). The court noted, "In his testimony, [the father] became excessively angry and aggressive in his tone with the court." The mother attended the adjudication hearing on May 25 but did not attend the dispositional hearing on August 3 or a review hearing on November 3. DHS reported that it had difficulty communicating with the mother. The review order stated, "The mother resides in Arizona. Her [Interstate Compact on the Placement of Children (ICPC)] home study was denied, largely as a result of her refusal to share necessary information." DHS had continued difficulty staying in contact with the mother.

On February 15, 2022, the State filed a petition seeking termination of the parents' rights. At the termination hearing, the mother stated she did not give any information when contacted for the ICPC. The mother stated she had not seen the child in person since she got out of prison in 2019. She had one video visit with the child prior to the termination hearing. DHS reported the child regressed in her

---

[2] In a new charge, the father pled guilty to assault causing bodily injury. In January 2022, he was sentenced to twenty-six days in jail, with credit given for twenty-six days previously served.

behaviors after the visit. Following the visit, the child struggled with self-harming behavior, bed-wetting, and nightmares. DHS determined all visits should occur in a therapeutic setting. No further visits occurred.

The father testified that he wanted to maintain a relationship with the child. He stated, "I did discipline her in which way that she may not have liked and it cause—it caused a lot of distraction towards her life or whatsoever." He denied physically abusing the child and said the guilty plea "was pretty much forced on me to sign due to my lack of understanding."

The juvenile court entered an order on May 23, 2022, terminating the father's parental rights under section 232.116(1)(b), (d), (e), (f), and (j) (2022) and the mother's parental rights under section 232.116(1)(b), (d), (e), and (f). On the issue of the child's best interests, the court found:

> The child's safety is a primary consideration. Unfortunately, the safety concerns that led to removal continue to exist today. The parents' lack of participation in services shows an inability or unwillingness to make necessary changes to have their child placed in their care. This child's future can be gleaned from evidence of the parents' past performance and motivations.

The court determined none of the exceptions in section 232.116(3) should be applied. The mother and father appeal the juvenile court's decision.

## II.     Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary

concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

### III. Father

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.*

**A.** The father disputes the second element—whether termination of his parental rights is in the child's best interests. He does not challenge the sufficiency of the evidence to support the statutory grounds to terminate his parental rights, so we do not address this step. *See id.* at 40.

In considering the best interests of a child, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child under section 232.116(2)." *Id.* at 41. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.*

We find termination of the father's parental rights is in the child's best interests. This is not a close call. The father physically abused the child and pled guilty to child endangerment. He has not participated in services to improve his

parenting skills. The father has not taken responsibility for his actions. Additionally, because of the no-contact order, his contact with the child is prohibited until 2027. We conclude termination of the father's parental rights is in the child's best interests.

**B.** On the third element, the father claims there is "a very strong bond between himself and the child." Iowa Code section 232.116(3)(c) provides that the court may decide not to terminate a parent's rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The exceptions to termination found in section 232.116(3) are permissive, not mandatory. *In re W.T.*, 967 N.W.2d 315, 324 (Iowa 2021). We agree with the juvenile court's statement on this issue:

> The father seems to assert that, based on the bond between him and his daughter, that termination would be more harmful than maintaining his parental rights. However, the child's therapist testified that [the child's] memories of her father are of being scared. She does not mention that she misses him or wants to see him.

**IV.    Mother**

**A.** The mother claims there is not sufficient evidence in the record to support termination of her parental rights. "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination." *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015). "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to

affirm." *Id.* at 435. We consider the termination of the mother's parental rights under section 232.116(1)(f).[3]

The third element of section 232.116(1)(f) requires a finding that "[t]he child has been removed from the physical custody of the child's parents." The mother claims because she never had the child in her physical custody, this element has not been proven. She disputes the applicability of section 232.116(1)(f), stating the section should not apply to a parent who never had physical custody of their child. We reject this argument.

In *In re C.F.-H.*, the Iowa Supreme Court found "mere lack of physical custody" was not "sufficient to satisfy the statutory requirement of 'removal of physical custody.'" 889 N.W.2d 201, 208 (Iowa 2016). There, the child remained in the mother's custody and was never removed by judicial proceedings from the father's custody, leading the court to conclude the third element of section 232.116(1)(f) had not been met. *Id.* Later, in *In re J.E.*, the juvenile court issued an order removing the child from one parent, which this court found "distinguishes this case from *C.F.-H.*" 907 N.W.2d 544, 547 (Iowa Ct. App. 2017). This court stated that physical removal from one parent "is sufficient to start the statutory

---

[3] Section 232.116(1)(f) provides for termination of parental rights if the court finds all of the following:

    (1) The child is four years of age or older.

    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

timelines counting toward termination as to either parent." *Id.*; *see also In re Z.P.*, 948 N.W.2d 518, 523 (Iowa 2020) (noting the removal from one parent "constituted a physical removal as contemplated by the statute").

The child was formally removed from the parents' custody on February 15, 2021. This removal order was sufficient to start the statutory clock for termination of parental rights under section 232.116(1)(f). *See J.E.*, 907 N.W.2d at 547. We find section 232.116(1)(f)(3) applies because the child was removed from the parents' custody. *See Z.P.*, 948 N.W.2d at 523.

The mother does not dispute the other elements of section 232.116(1)(f), so we do not address them. We conclude the juvenile court properly determined the mother's parental rights could be terminated under section 232.116(1)(f).

**B.** The mother contends that she should be given additional time to work on reunification with the child. She states the court should have given her an extension for six months under section 232.104(2)(b), which provides for a six-month extension based on a "determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." The mother asserts that DHS did not provide her with sufficient services. She states that with proper services, within six months the child could be returned to her custody.

The mother's argument includes a claim that the State did not make reasonable efforts to reunite her with the child. "Reasonable efforts are services to 'preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for

the child to safely return to the family's home.'" *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019) (quoting Iowa Code § 232.102(10)(a)).

On April 8, 2022, after the petition for termination of parental rights was filed, the mother filed a motion on denial of reasonable efforts, claiming the State had not done enough to provide her with visitation with the child. The court denied the motion, finding a previous order specified how visitation would proceed. Although the mother claims on appeal that DHS did not provide her with sufficient services, she does not identify the specific services that should have been offered to her. She argues only that she should be permitted "additional time to unify with M.W. based on the lack of services the Department provided." The mother's failure to object or identify the alleged deficiency in services provided by DHS prior to the termination hearing waives the issue. *See In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017). A challenge raised for the first time on appeal is too late. *See id.*

The juvenile court did not address the issue of an extension of time under section 232.104(2)(b) in the termination order. We determine the issue has not been preserved for our review. *See In re M.A.F.*, 679 N.W.2d 683, 685 (Iowa Ct. App. 2004) ("Under our rules of civil procedure, an issue which is not raised before the juvenile court may not be raised for the first time on appeal."). Even if the issue had been preserved, we find an extension of time would not be appropriate in this case. The mother did not participate in the services that were offered to her. She has an extensive history of involvement in the criminal system and child welfare system. The court found, "The parents' lack of participation in services shows an inability or unwillingness to make necessary changes to have their child placed in their care." We are unable to conclude that the need for removal of the child from

the child's home will no longer exist at the end of any additional six-month period.

We affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED ON BOTH APPEALS.**